UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X

ROBERT GINGHER,

               Plaintiff,

       -against-

DICKSTEIN SHAPIRO, LLP,
ROBERT DICKERSON, JEFFREY
K. SHERWOOD, STEVEN WEISBURD,
MICHAEL NANNES, JAMES KELLY,
& DEBORAH SKAKEL (are sued in their
individual capacities Pursuant to
NYEL §296(6),

               Defendants.

----------------------------------------------------X

**15 CV 2706**

CV:

**JURY TRIAL DEMANDED**

JUDGE WOODS



Plaintiff ROBERT GINGHER, by and through his attorneys, SCOTT MICHAEL

MISHKIN, P.C., complaining of the Defendants, alleges as follows:

### PRELIMINARY STATEMENT

This case is brought pursuant to the FLSA 29 C.F.R. § 778.211(c) as well as New

York Executive Law (NYELL) §§ 290 *et seq.* as for and in regard to defendants'

discrimination against plaintiff due to his Age, Gender, National Origin and Sexual

Orientation and pursuant the New York State Labor Law (NYLL) §§ 190, *et seq.*

(hereinafter referred to as for and in regard to defendants willful and intentional failure to

pay plaintiff his earned bonus wages as required by law.

### JURISDICTION

The basis for Jurisdiction over the subject matter of this action is under 28 U.S.C.

§1332(a)(2), as there is complete diversity of citizenship between the parties and the

amount in damages is more the $75,000.00, exclusive of interest and costs.  In addition

this court has jurisdiction pursuant to the FLSA 29 C.F.R. § 778.211(c).

## VENUE

FIRST:        The unlawful practices alleged below were committed within Manhattan County in the State of New York.

SECOND:       At the time of the unlawful practices allege herein, plaintiff was employed at defendants Dickstein Shapiro ("Dickstein" and/or "defendant") satellite New York office located at 633 Broadway #2 C2, New York, NY 10019 and was a resident of Suffolk County in the State of New York.

THIRD:        At the time of the unlawful practices alleged herein, Dickstein was incorporated in Washington D.C. with its principle place of business being at 1825 Eye Street NW, Washington DC 20006 but was doing business in the State of New York.

FOURTH:       At all times relevant to this action, the unlawful practices alleged herein occurred in the County of Manhattan and in the State of New York.

FIFTH:        Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## PARTIES

SIXTH:        At all times relevant to this action, Robert Gingher ("plaintiff") was an individual employed by defendant as an attorney.

SEVENTH:      At all times relevant to this action, Dickstein was an enterprise engaged in commerce or in the production of goods for or has employees handling, selling, or otherwise working on goods or materials that have been moved in or

produced for commerce by any person; and whose annual gross volume of sales made or business done is not less than $500,000.

EIGHTH:     Plaintiff was an employee within the meaning of the FLSA; and his employment relationship with Dickstein is not exempted from the FLSA. 29 U.S.C. § 203(e)(1).

NINTH:     Dickstein was an employer within the meaning of the FLSA as it was a partnership, association, corporation, business trust, legal representative, or any organized group of persons. 29 U.S.C.  § 203(a)(d)(g).

TENTH:     As part of plaintiff's earned wage, in which he relied on during the course of his employment at Dickstein as a production worker, bonuses were provided to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm and were therefore regarded as part of plaintiff's regular rate of pay. 29 C.F.R. § 778.211(c).

ELEVENTH:  Under the FLSA, plaintiff's regular rate of pay includes all compensation received including bonuses.

TWELFTH:    Plaintiff's position responsibilities at Dickstein were functional and not conceptual, as he did not create firm strategy or craft firm policy and his employment relationship is not exempted from the FLSA.

THIRTEENTH:      Dickstein's principle commerce goal was production activity.

FOURTEENTH:      At all times relevant to this action, plaintiff was an "employee" of Dickstein as defined by the NYLL.

FIFTEENTH: At all times relevant to this action, Dickstein was an "employer" as

defined by the NYLL.

SIXTEENTH:   Plaintiff, at all times referenced herein, and at the time the causes of action arose, was more than qualified for his position as an attorney at Dickstein.

SEVENTEENTH:   During the course of plaintiff's employment, Dickstein controlled the entire manner and means by which plaintiff completed his employment duties at Dickstein.

EIGHTEENTH:   At all times relevant to this action, Dickstein exercised control over plaintiff as his employer in that it had the power to hire, fire, promote and/or discipline plaintiff.

NINETEENTH:   At all times relevant to this action, Dickstein exercised control over plaintiff in that it created and maintained employment records related to plaintiff's employment and his responsibilities as an employee of Dickstein.

TWENTIETH:   At all times relevant to this action, Dickstein determined the rate and method of payment by which plaintiff would be compensated, including his bonus which was based on the number of hours plaintiff billed to Dickstein's clients.

TWENTY-FIRST:   At all times relevant to this action, Dickstein determined the clients who plaintiff would perform work for and supervised his work for said clients.

TWENTY-SECOND:   At all times relevant to this action, plaintiff did not possess any supervisory or managerial authority at defendant.

TWENTY-THIRD:   At all times relevant to this action, Dickstein exercised

control over plaintiff as his employer in that Dickstein supervised and controlled plaintiff's work and exercised control over the terms and conditions of plaintiff's employment, including but not limited to, determining plaintiff's responsibilities, the incentive for hours he worked, the locations he worked, and his pay.

TWENTY-FOURTH:     At all times relevant to this action, Robert Dickerson ("Dickerson") was an "employer" as defined by the FLSA and NYLL.

TWENTY-FIFTH:     During the course of plaintiff's employment, Dickerson controlled the entire manner and means by which plaintiff completed his employment duties at Dickstein.

TWENTY-SIXTH:     At all times relevant to this action, Dickerson exercised control over plaintiff as his employer in that he had the power to hire, fire, promote and/or discipline plaintiff.

TWENTY-SEVENTH:        At all times relevant to this action, Dickerson exercised control over plaintiff in that he created and maintained employment records related to plaintiff's employment and his position responsibilities as an employee.

TWENTY-EIGHTH:  At all times relevant to this action, Dickerson determined the rate and method of payment by which plaintiff would be compensated, which was on the number of hours plaintiff billed as a production worker.

TWENTY-NINTH:     At all times relevant to this action, Dickerson determined the clients who plaintiff would perform work for and supervised his work for said clients.

THIRTIETH:  During the course of plaintiff's employment, Jeffrey K. Sherwood ("Sherwood") controlled the entire manner and means by which plaintiff completed

his production employment duties at Dickstein.

THIRTY-FIRST:      At all times relevant to this action, Sherwood exercised control over plaintiff as his employer in that he had the power to hire, fire, promote and/or discipline plaintiff.

THIRTY-SECOND:   At all times relevant to this action, Sherwood exercised control over plaintiff in that he created and maintained employment records related to plaintiff's employment and his production responsibilities.

THIRTY-THIRD:      At all times relevant to this action, Sherwood determined the rate and method of payment by which plaintiff would be compensated, which was on the number of hours plaintiff billed to Dickstein's clients.

THIRTY-FOURTH:   At all times relevant to this action, Sherwood determined the clients who plaintiff would perform work for and supervised his work for said clients.

THIRTY-FIFTH:      During the course of plaintiff's employment, Steve Weisburd ("Weisburd") controlled the entire manner and means by which plaintiff completed his production employment duties at Dickstein.

THIRTY-SIXTH:      At all times relevant to this action, Weisburd exercised control over plaintiff as his employer in that he had the power to hire, fire, promote and/or discipline plaintiff.

THIRTY-SEVENTH:      At all times relevant to this action, Weisburd exercised control over plaintiff in that he created and maintained employment records related to plaintiff's employment and his position responsibilities as an employee.

THIRTY-EIGHTH:   At all times relevant to this action, Weisburd determined

the rate and method of payment by which plaintiff would be compensated, which was on the number of hours plaintiff billed Dickstein's clients.

THIRTY-NINTH:    At all times relevant to this action, Weisburd determined the clients who plaintiff would perform work for and supervised his work for said clients.

FORTIETH:    During the course of plaintiff's employment, James Kelly ("Kelly") controlled the entire manner and means by which plaintiff completed his employment duties at Dickstein.

FORTY-FIRST:    At all times relevant to this action, Kelly exercised control over plaintiff as his employer in that he had the power to hire, fire, promote and/or discipline plaintiff.

FORTY-SECOND:    At all times relevant to this action, Kelly exercised control over plaintiff in that he created and maintained employment records related to plaintiff's employment and his production responsibilities as an employee.

FORTY-THIRD:    At all times relevant to this action, Kelly determined the rate and method of payment by which plaintiff would be compensated, which was on the number of hours plaintiff billed to Dickstein's clients.

FORTY-FOURTH:    At all times relevant to this action, Kelly determined the clients who plaintiff would perform work for and supervised his work for said clients.

FORTY-FIFTH:    During the course of plaintiff's employment, Deborah Skakel ("Skakel") controlled the entire manner and means by which plaintiff completed his employment duties at Dickstein.

FORTY-SIXTH:    At all times relevant to this action, Skakel, as managing

partner, exercised control over plaintiff as his employer in that he had the power to hire, fire, promote and/or discipline plaintiff.

FORTY-SEVENTH: At all times relevant to this action, Skakel exercised control over plaintiff in that she created and maintained employment records related to plaintiff's employment and his production responsibilities as an employee.

FORTY-EIGHTH: At all times relevant to this action, Skakel determined the rate and method of payment by which plaintiff would be compensated, which was on the number of hours plaintiff billed to Dickstein's clients.

FORTY-NINTH: At all times relevant to this action, Skakel determined the clients who plaintiff would perform work for and supervised his work for said clients.

FIFTIETH: During the course of plaintiff's employment, Michael Nannes ("Nannes") controlled the entire manner and means by which plaintiff completed his employment duties at Dickstein.

FIFTY-FIRST: At all times relevant to this action, Nannes exercised control over plaintiff as his employer in that he had the power to hire, fire, promote and/or discipline plaintiff.

FIFTY-SECOND: At all times relevant to this action, Nannes exercised control over plaintiff in that he created and maintained employment records related to plaintiff's employment and his responsibilities as a production employee at Dickstein.

FIFTY-THIRD: At all times relevant to this action, Nannes determined the rate and method of payment by which plaintiff would be compensated, which was on the number of hours plaintiff billed to Dickstein's clients.

FIFTY-FOURTH: At all times relevant to this action, Nannes determined the

client's who plaintiff would perform work for and supervised his work for said clients.

FIFTY-FIFTH:     Dickstein is an employer as defined by NYEL §292 (5).

FIFTY-SIXTH:     Dickerson was and is still employed a partner of Dickstein at the time the alleged discriminatory practices occurred against plaintiff due to his age, national origin, sexual orientation and gender.

FIFTY-SEVENTH:   Dickerson had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her discriminatory treatment against plaintiff.

FIFTY-EIGHTH:     Dickerson actually participated in the conduct giving rise to plaintiff's discrimination claims based on age, national origin, sexual orientation and gender and is therefore individually liable for his discriminatory treatment against plaintiff under NYEL.

FIFTY-NINTH:     Dickerson aided, abetted, incited, compelled and/or coerced the acts against plaintiff that are forbidden under NYEL and is therefore individually liable for his discriminatory treatment against plaintiff under NYEL.

SIXTIETH:    Kelly was and is still employed as a Managing Partner of Dickstein at the time the alleged discriminatory practices occurred against plaintiff due to his age, national origin, sexual orientation and gender.

SIXTY-FIRST:     Kelly had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his discriminatory treatment against plaintiff due to his age, national origin, sexual orientation and gender.

SIXTY-SECOND:    Kelly actually participated in the conduct giving rise to

plaintiff's discrimination claims based on age, national origin, sexual orientation and gender and is therefore individually liable for his discriminatory treatment against plaintiff under NYEL.

SIXTY-THIRD:    Kelly aided, abetted, incited, compelled and/or coerced the acts against plaintiff that are forbidden under NYEL and is therefore individually liable for his discriminatory treatment against plaintiff under NYEL.

SIXTY-FOURTH:    Skakel was and is still employed as a Managing Partner of Dickstein at the time the alleged discriminatory practices occurred against plaintiff due to his age, national origin, sexual orientation and gender.

SIXTY-FIFTH:    Skakel had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her discriminatory treatment against plaintiff due to his age, national origin, sexual orientation and gender.

SIXTY-SIXTH:    Skakel actually participated in the conduct giving rise to plaintiff's discrimination claims based on age, national origin, sexual orientation and gender and is therefore individually liable for her discriminatory treatment against plaintiff under NYEL.

SIXTY-SEVENTH:    Skakel aided, abetted, incited, compelled and/or coerced the acts against plaintiff that are forbidden under NYEL and is therefore individually liable for her discriminatory treatment against plaintiff under NYEL.

SIXTY-EIGHTH:    Nannes was employed as a Managing Partner of Dickstein at the time the alleged discriminatory practices occurred plaintiff due to his age, national origin, sexual orientation and gender.

SIXTY-NINTH:      Nannes had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her discriminatory treatment against plaintiff due to his age, national origin, sexual orientation and gender.

SEVENTIETH:      Nannes actually participated in the conduct giving rise to plaintiff's discrimination claims based on age, national origin, sexual orientation and gender and is therefore individually liable for his discriminatory treatment against plaintiff under NYEL.

SEVENTY-FIRST:    Nannes aided, abetted, incited, compelled and/or coerced the acts against plaintiff that are forbidden under NYEL and is therefore individually liable for his discriminatory treatment against plaintiff under NYEL.

SEVENTY-SECOND:      Weisburd was employed as a Partner of Dickstein at the time the alleged discriminatory practices occurred.

SEVENTY-THIRD:   Weisburd had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his discriminatory treatment against plaintiff due to his age, national origin, sexual orientation and gender.

SEVENTY-FOURTH:      Weisburd actually participated in the conduct giving rise to plaintiff's discrimination claims based on age, national origin, sexual orientation and gender and is therefore individually liable for his discriminatory treatment against plaintiff under NYEL.

SEVENTY-FIFTH:    Weisburd aided, abetted, incited, compelled and/or coerced the acts against plaintiff that are forbidden under NYEL and is therefore individually

liable for his discriminatory treatment against plaintiff under NYEL.

SEVENTY-SIXTH:   Sherwood was and is still employed as a Partner of Dickstein at the time the alleged discriminatory practices occurred against plaintiff due to his age, national origin, sexual orientation and gender.

SEVENTY-SEVENTH:      Sherwood had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his discriminatory treatment against plaintiff due to his age, national origin, sexual orientation and gender.

SEVENTY-EIGHTH: Sherwood actually participated in the conduct giving rise to Plaintiff's discrimination claims based on age, national origin, sexual orientation and gender and is therefore individually liable for his discriminatory treatment against plaintiff under NYEL.

SEVENTY-NINTH:   Sherwood aided, abetted, incited, compelled and/or coerced the acts against plaintiff that are forbidden under NYEL and is therefore individually liable for his discriminatory treatment against plaintiff under NYEL.

EIGHTIETH:  This is a continuing violation doctrine matter, in that the discrimination against plaintiff due to his age, national origin, sexual orientation and gender by the named defendants occurred with three (3) years of the commencement of this action, and the same defendants discriminated against plaintiff due to his age, national origin, sexual orientation and gender outside the three (3) year statute of limitation, hence those discriminatory acts against plaintiff due to his age, national origin, sexual orientation and gender outside the three (3) years statute of limitations arte actionable herein.

## FACTS

EIGHTY-FIRST:        Dickstein is a general practice law firm that provides

production activity through legal goods with one of its principle production activities

being services for intellectual property litigation.

EIGHTY-SECOND:  Plaintiff began his employment at Dickstein on or about

February 2004, in the capacity of attorney and in house title of third year lateral Associate

to work in defendant's New York Intellectual Property Department.

EIGHTY-THIRD:        On January 7, 2014, defendants advised plaintiff

that he would be terminated from his employment as Dickstein on February 7, 2014.

EIGHTY-FOURTH:   Plaintiff was Fifty- One (51) years of age on his February

7, 2014, wrongful and discriminatory termination date.

EIGHTY-FIFTH:        On the day of his wrongful discriminatory termination

defendant owed plaintiff One Hundred Thousand ($100,000.00) Dollars for his annual

2013 earned (wage) bonus.

EIGHTY-SIXTH:        During the course of his employment at Dickstein,

plaintiff, as a production worker, relied on his bonus that had been provided to him (and

other similarly situated employees) to induce him to work more steadily or more rapidly

or more efficiently or to remain with the firm and was therefore regarded as part of

plaintiff's regular rate of pay.

EIGHTY-SEVENTH:        Throughout his employment at Dickstein,

defendants' represented to plaintiff that he was paid his annual earned bonus as

calculated by Dickstein's existing policies, custom and practice, and its Origination and

Management credit however, plaintiff may be still owed additional earned bonus wages

that are within the statute of limitation pursuant to the FLSA and NYLL. However, it is clear that defendants have not paid plaintiff his entire earned bonus for calendar year 2013.

EIGHTY-EIGHTH:   Dickstein admitted that plaintiff was owed his earned bonus for 2013, up through the day of his wrongful termination.

EIGHTY-NINETH:   Dickstein actions clearly demonstrated that it was aware of their obligation pursuant to the FLSA and NYLL to pay plaintiff his earned 2013 bonus.

NINETY:       However, in violation of both the FLSA and NYLL, on February 6, 2014, defendants paid plaintiff only a portion of his earned One Hundred Thousand ($100,000.00) Dollar 2013, earned and relied upon bonus.

NINETY-FIRST:       And on February 6, 2014, defendants paid plaintiff only Forty Two Thousand Two Hundred Fifty ($42,250.00) Dollars of his earned One Hundred Thousand ($100,000.00) Dollar 2013 relied upon bonus.

NINETY-SECOND:   To date, defendant owes plaintiff Fifty Seven Thousand Seven Hundred Fifty ($57,750.00) Dollars of his 2013 earned bonus plus interest, and statutory penalties plus attorney fees pursuant to the FLSA and NYLL and upon information and belief additional earned bonus income throughout his employment at Dickstein that is within the statute of limitations for both the FLSA and NYLL

NINETY-THIRD:       Defendants' incentive compensation was earned by plaintiff as he acquired a vested interest in the award and its payment, as it was not conditioned upon some occurrence or left to the discretion of the employer.

NINETY-FOURTH:   Defendants' compensation bonus agreement was expressly based upon plaintiff's own personal productivity, defendants' policy and therefore

constituted plaintiff's earned wages.

NINETY-FIFTH: In addition, pursuant to defendants' compensation policies, upon which plaintiff relied on and induced him to work more steadily or more rapidly or more efficiently or to remain with the firm was deferred compensation.

NINETY-SIXTH: Defendants' deferred compensation policies, for plaintiff and all similarly situated employees, were based on management and origination credit.

NINETY-SEVENTH: Defendants' deferred compensation policy was separate and apart from its bonus policies and subjects defendants' to violations pursuant to both the FLSA and NYLL.

NINETY-EIGHTH: Pursuant to defendants' express policies, plaintiff received management and origination credit deferred compensation for 2012, in the amount of Four Thousand Two Hundred Seventy Nine ($4,279.20) Dollars and Twenty Cents.

NINETY-NINETH: Pursuant to defendants' express policies, plaintiff should have received deferred compensation for 2103 in the amount of Four Thousand Five Hundred ($4,500.00) Dollars.

ONE-HUNDRED: As such, defendants' owe plaintiff his 2013, deferred compensation in the amount of Four Thousand Five Hundred ($4,500.00) Dollars. plus interest, and statutory penalties plus attorney fees pursuant to the FLSA and NYLL.

ONE-HUNDRED-FIRST: Throughout plaintiff's employment with defendants' their existing written policies in regard to younger similarly situated employees as plaintiff, to becoming a partner at defendant, including but not limited to its "PolicyPartner," and other criteria (Criteria).

ONE-HUNDRED-SECOND: Defendants' criteria detailed the process and

timeline for younger, non Caucasian, female, and homosexual similarly situated

employees as plaintiff that were required and needed to be accomplished in order for a

non-partner to become a partner at Dickstein.

ONE-HUNDRED-THIRD:    Throughout his career, plaintiff either met or

exceeded defendants' criteria, but was never promoted to partner, as was his younger,

non Caucasian, female, and homosexual similarly situated co-workers, who upon

information and belief did not exceed plaintiff's performance as per the criteria and/or

were not as qualified as plaintiff to become partner.

ONE-HUNDRED-FOURTH:        Defendants' discriminated against plaintiff

by promoting younger, non Caucasian, female, and homosexual similarly situated

employees as himself to partner and not him, and upon information, who did not out

perform plaintiff pursuant to defendants' written policies.

ONE-HUNDRED-FIFTH:    On January 7, 2014, when plaintiff inquired as to

why he was not being promoted to partner as was his younger, non Caucasian, female,

and homosexual similarly situated co-workers, all of whom had been working at

defendant for less years than plaintiff, he was told that defendant wanted to invest in

these other diverse and younger attorneys.

ONE-HUNDRED-SIXTH:    A promotion to partner at defendant provided for

additional benefits, including but not limited to a substantial increase in yearly

compensation.

ONE-HUNDRED-SEVENTH:        In fact, the same if not all the named

defendants' were directly responsible for not promoting plaintiff to partner due to his age

and promoting plaintiff's younger similarly situated co-workers, despite plaintiff being

equal to or far more qualified for the promotion to partner, in 2009, 2011 and 2013, therefore making all these actionable pursuant to a continuing violation doctrine.

ONE-HUNDRED-EIGHTH: On December 14, 2009, Nannes and other named defendants' promoted Bill Denver, Cassandra Franklin, Brian Finch, John Gibbons, Keith McKenna, Sandra Thayer and Jason Wallach to partner and not plaintiff. All were either, younger, non Caucasian, female, or homosexual than plaintiff, with respective new salary increases to Three Hundred Thirty Thousand ($330,000.00) Dollars a year, while plaintiff remained earning Two Hundred Sixty One Thousand Four Hundred Sixteen ($261,416.00) Dollars a year.

ONE-HUNDRED-NINETH: Dickstein did not promote any individuals to partner in 2010, and as such, plaintiff should have been earning Three Hundred Thirty Thousand ($330,000.00) Dollars a year as opposed to his Two Hundred Seventy Five Thousand ($275,000.00) Dollars 2010 salary.

ONE-HUNDRED-TENTH:   On December 12, 2011, Nannes and other named defendants' promoted Justin Chiardo, Dipu Doshi, Jeff Schulman, Megan Woodworth and Cindy Yang to partner and not plaintiff. All were either, younger, non Caucasian, female, or homosexual than plaintiff, with respective salary increases to Three Hundred Forty Thousand ($340,000.00) Dollars a year, while plaintiff was earning Three Hundred Three Thousand Twenty Five ($303,025.00) Dollars a year.

ONE-HUNDRED-ELEVENTH:      As of December 2011, plaintiff had the most experience and time working as defendant's Senior Associate in defendants' Intellectual Property Group, within defendant's entire law firm.

ONE-HUNDRED-TWELFTH:      On December 12, 2012, Nannes and other

named defendants' promoted Katie Scott and David Young to partner and not plaintiff. Both were younger than plaintiff, and received respective pay increases to Three Hundred Forty Thousand ($340,000.00) Dollars a year, while plaintiff remained earning Two Hundred Eighty Nine Thousand Five Hundred Thirty Nine ($289,539.00) Dollars.

ONE-HUNDRED-THIRTEENTH:   As of December 2012, plaintiff had the most experience and time working as defendant's Senior Associate in defendants' Intellectual Property Group, within defendant's entire law firm.

ONE-HUNDRED-FOURTEENTH:   Plaintiff's annual salary for 2013, was Two Hundred Ninety One Thousand One Hundred Thirty ($291,130.00) Dollars, and should have been Three Hundred Forty Thousand ($340,000.00) Dollars, as a partner, and should have remained the same or higher at the time of his wrongful termination on February 7, 2014, as a partner but for his age, gender, national origin and sexual orientation.

**WHEREFORE,** Plaintiff demands judgment against defendants as follows:

1. For a money judgment, against Dickstein for its failure to pay plaintiff his earned bonuses from December 2009, up to and including February 7, 2014 to be determined at trial, but not less than Fifty Seven Thousand Seven Hundred Fifty ($57,750.00) Dollars plus interest, liquidated damages in the amount of one hundred percent (100%) of the total amount due, and attorney's fees and/or statutory sanctions pursuant to FLSA 29 C.F.R. § 778.211(c)

2. For a money judgment, against each individual named defendant herein, for their failure to pay plaintiff his earned bonuses from December 2009, up to and including February 7, 2014 to be determined at trial, but not less than Fifty Seven Thousand Seven

Hundred Fifty ($57,750.00) Dollars plus interest, liquidated damages in the amount of

one hundred percent (100%) of the total amount due, and attorney's fees and/or statutory

sanctions pursuant to FLSA 29 C.F.R. § 778.211(c)

      3.  For a money judgment, against Dickstein for its failure to pay plaintiff his

earned bonuses from December 2009, up to and including February 7, 2014 to be

determined at trial, but not less than Fifty Seven Thousand Seven Hundred Fifty

($57,750.00) Dollars plus interest, liquidated damages in the amount of one hundred

percent (100%) of the total amount due, and attorney's fees and/or statutory sanctions

pursuant to NYLL §§ 190, *et seq.*;

      4.    For a money judgment, against each individual named defendant herein

for their failure to pay plaintiff his earned bonuses from December 2009, up to and

including February 7, 2014 to be determined at trial, but not less than Fifty Seven

Thousand Seven Hundred Fifty ($57,750.00) Dollars plus interest, liquidated damages in

the amount of one hundred percent (100%) of the total amount due, and attorney's fees

and/or statutory sanctions pursuant to NYLL §§ 190, *et seq.*;

      5.    For a money judgment against defendant Dickstein representing actual

damages for each cause of action separately for its age, gender, national origin and sexual

orientation discrimination, against plaintiff between December 2009, and up to and

including February 7, 2014, as a continuing violation doctrine in violation of

NYEL § 290 *et seq.*;

      6.    For a money judgment against defendant Dickstein representing

compensatory damages for each cause of action separately for its age, gender, national

origin and sexual orientation discrimination, against plaintiff between December 2009,

and up to and including February 7, 2014, as a continuing violation doctrine in violation of NYEL § 290 *et seq.*;

7.      For a money judgment against each named defendant individually representing actual damages for their his aiding, abetting, inciting, compelling, and/or coercing Dickstein for each cause of action separately for age, gender, national origin and sexual orientation discrimination, discrimination against plaintiff between December 2009, and up to and including February 7, 2014, as a continuing violation doctrine in violation in violation of NYEL § 290 *et seq.*;

8.      For a money judgment against each named defendant individually representing compensatory damages for their his aiding, abetting, inciting, compelling, and/or coercing Dickstein for each cause of action separately for age, gender, national origin and sexual orientation discrimination, discrimination against plaintiff between December 2009, and up to and including February 7, 2014, as a continuing violation doctrine in violation in violation of NYEL § 290 *et seq.*;

9.      For reasonable attorney's fees and costs pursuant to the FLSA and NYLL;

10.     For equitable relief;

11.     For such further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff herein demands a trial by jury of all issues in this action.

Dated: Islandia, New York
      March 26, 2015                    **SCOTT MICHAEL MISHKIN, P.C.**

                                By:     Scott Michael Mishkin, Esq.
                                        One Suffolk Square, Suite 240
                                        Islandia, New York 11749
                                        Telephone: (631) 234-1154
                                        Facsimile:  (631) 234-5048
                                        *Attorneys for Plaintiff*